# In the
# United States Court of Appeals
# for the Second Circuit

August Term 2023
Argued: April 16, 2024
Decided: September 26, 2024

No. 23-1005

BLOOMBERG L.P. AND DOW
JONES & COMPANY, INC.,
*Plaintiffs-Appellants*,
v.
UNITED STATES POSTAL SERVICE,
*Defendant-Appellee*.

Appeal from the United States District Court for the Southern District of New York

Before: LYNCH, PÉREZ, AND KAHN, *Circuit Judges*.

On appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J*.).

The Freedom of Information Act ("FOIA") was designed to create a broad public right of access to official information held by federal agencies. Under this general statutory presumption of access, federal agencies must disclose agency records upon request unless said records fall into one of nine specific statutory exemptions. This case concerns FOIA Exemption #3, which establishes that the general FOIA disclosure requirement "does not apply to matters that are . . . specifically exempted from disclosure by statute . . . if that statute . . . establishes particular criteria for withholding or refers to particular types of matters to be

withheld." 5 U.S.C. § 552(b)(3)(A)(ii). The withholding statute relevant to this case is the Postal Reorganization Act of 1970 (the "Postal Reorganization Act"), specifically a provision allowing the United States Postal Service ("USPS" or "Postal Service") to withhold production of "information of a commercial nature." 39 U.S.C. § 410(c)(2).

Appellants in this case are the publishers of two media outlets that produce reporting on economics and urban policy trends—*CityLab* and *The Wall Street Journal*. Reporters from each outlet sought disclosure of aggregated, anonymized change-of-address ("COA") data collected by USPS that they wish to use to produce reporting about movement trends in the United States. USPS denied the FOIA requests at issue, citing FOIA Exemption #3 and asserting that the data was protected as "information of a commercial nature" because it intended to incorporate the data into a commercial product called "Population Mobility Trends." The district court granted summary judgment to USPS. Because we agree that USPS has satisfied its burden of demonstrating that the requested COA data is protected as "information of a commercial nature" pursuant to the Postal Reorganization Act and FOIA Exemption #3, we affirm.

AFFIRMED. Judge Kahn concurs and dissents in a separate opinion.

ADAM A. MARSHALL (Katie Townsend, *on the brief*), Reporters Committee for Freedom of the Press, Washington, D.C., *for Plaintiffs-Appellants.*

TOMOKO ONOZAWA (Benjamin Torrance, *on the brief*) for Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Defendant-Appellee.*

MYRNA PÉREZ, *Circuit Judge*:

The Freedom of Information Act ("FOIA") generally requires federal agencies to produce any document considered an agency record "upon any request" by a member of the public. 5 U.S.C. § 552(a)(3)(A). FOIA was "designed to create a broad right of access to 'official information.'" *U.S. Dep't of Justice v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)). Under this general statutory presumption of access, federal agencies must disclose agency records upon request unless said records fall into one of nine specific statutory exemptions. *See* 5 U.S.C. § 552(b)(1)–(9). Most cases about FOIA exemptions require a reviewing court to consider the detailed factual contents of a specific set of documents and determine whether disclosure of said documents would infringe on an interest protected by one of the FOIA

exemptions, such as national security under Exemption #1, *id.* § 552(b)(1), or personal privacy under Exemption #6, *id.* § 552(b)(6).

This case concerns an exemption of a different kind—FOIA Exemption #3, which establishes that the general FOIA disclosure requirement "does not apply to matters that are . . . specifically exempted from disclosure by statute . . . if that statute . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* § 552(b)(3)(A)(ii). The withholding statute relevant to this case is the Postal Reorganization Act of 1970 (the "Postal Reorganization Act"), specifically a provision allowing the United States Postal Service ("USPS" or "Postal Service") to withhold production of "information of a commercial nature." 39 U.S.C. § 410(c)(2).

Appellants in this case, Bloomberg L.P. ("Bloomberg") and Dow Jones & Company, Inc. ("Dow Jones"), are the publishers of two media outlets that produce reporting on economics and urban policy trends—*CityLab*, published by Bloomberg, and *The Wall Street Journal*, published by Dow Jones. Appellants sought disclosure of aggregated, anonymized change-of-address ("COA") data collected by USPS that they wish to use to produce reporting about population

movement trends in the United States.  Reporters from each outlet had requested and received similar COA records previously.

USPS denied the FOIA requests at issue, citing FOIA Exemption #3 and asserting that the data was protected as "information of a commercial nature" because it intended to incorporate the data into a commercial product called "Population Mobility Trends."  The district court granted summary judgment to USPS.  Because we agree that USPS has satisfied its burden of demonstrating that the requested COA data is protected as "information of a commercial nature" pursuant to the Postal Reorganization Act and FOIA Exemption #3, we affirm.

## BACKGROUND

The events of this case began in 2021, when reporters from Bloomberg and Dow Jones writing for *CityLab* and *The Wall Street Journal* made separate FOIA requests for COA data for specific time periods during the Covid-19 pandemic. Bloomberg's reporters requested data reflecting the net flow of population between specific zip codes for December 2020, and Dow Jones's reporters requested similar data for the first six months of 2021.  USPS had fulfilled similar requests from both publications in the past.  The reporters intended to use this data to support their reporting about population movement trends during the

pandemic. USPS denied Dow Jones's request on September 17, 2021, and Bloomberg's request on April 19, 2021, stating that the requested data was "under development for a commercial product." J. App'x at 45, 59.

## A. COA Data and Appellants' Data Reporting

When individuals, families, or businesses move to a new address, either permanently or temporarily, they can notify USPS and have their mail forwarded to the new address using an online or mail-in COA request. USPS retains data from these requests for a four-year period, after which it is permanently deleted. As will be discussed below, at various points in time and in various ways, USPS has made certain COA data available to the public in aggregated, anonymized datasets.

COA data is neither perfectly accurate nor the only source of information about population and movement trends. However, it provides a spotlight into how our country is changing that some find interesting and useful. As relevant to this case, data journalists from *CityLab* and *The Wall Street Journal* used COA data to produce journalistic products about movement trends during and because of the Covid-19 pandemic. *See, e.g.*, Marie Patino et al., *More Americans Are Leaving Cities, But Don't Call It an Urban Exodus*, Bloomberg (Apr. 26, 2021),

https://bloom.bg/3M7fu05 [https://perma.cc/D5P7-TGD8]; Yan Wu & Luis Melgar, *Americans Up and Moved During the Pandemic. Here's Where They Went.*, Wall St. J. (May 11, 2021), https://on.wsj.com/3NgWCx2 [https://perma.cc/3QWU-HRA9].

**B. Access to COA Data, Historically and Today**

Historically, USPS published some generalized COA data online for free, and allowed other, more specific forms of COA data to be produced in response to FOIA requests. USPS's "Frequently Requested Records" page allows anyone to download spreadsheets of COA data from 2018 through June of 2023 that provide the total number of COA filings into and out of each ZIP code in the United States for each calendar year. *See Frequently Requested Records: Change of Address Stats, USPS FOIA Library*, https://about.usps.com/who/legal/foia/library.htm [https://perma.cc/T8M7-XQ63] (last visited Aug. 14, 2024). This publicly available data does not allow a viewer to determine how many individuals or families moved out of any specific ZIP code *into* another specific ZIP code. Anyone seeking that type of data would need to request it through FOIA—which reporters from *CityLab* and *The Wall Street Journal* had done, successfully, on more than one occasion. *See* J. App'x at 115, 128.

The availability of COA data changed when USPS began developing Population Mobility Trends, the "commercial product" USPS referenced in its decisions to deny the two FOIA requests relevant to this case. Population Mobility Trends is a "tabular dataset built upon aggregated USPS National Change of Address data and 2020 Census demographics" that provides certain COA and Census data for a 48-month period and is updated monthly. J. App'x at 141. Any individual or organization may purchase a Population Mobility Trends license, but the licensing costs range from $91,000 for a limited amount of data from a 12-month window to $277,000 for an "Enterprise" level of data from the full 48-month window. *See* J. App'x at 161. Purchasers must also sign a "Data License Agreement" that contains certain restrictions on public disclosure of the underlying data that Appellants contend could make the data less useful for public reporting projects.

The data available through Population Mobility Trends is both over- and under-inclusive of the data previously available through FOIA requests. By incorporating Census data and other anonymized data collected through COA requests, Population Mobility Trends provides users with information about the demographic characteristics of individuals and families moving between specific

8

ZIP codes, including age, household size, and income. However, for any given ZIP code, Population Mobility Trends provides data about movement to only nine other ZIP codes—the top three destinations within the same county, the top three destinations in other counties within the same state, and the top three destinations outside the state. Population Mobility Trends also provides no information about ZIP codes with fewer than 11 total COA requests within the past calendar year. Data about movement between many specific ZIP codes is thus now unavailable, through either Population Mobility Trends or FOIA. USPS also ended its practice of providing more generalized COA data on its website in June 2023. Population Mobility Trends is now the only way to access aggregated, anonymized COA data in any large-scale, usable format.

## C. Procedural History

As referenced above, a *Wall Street Journal* reporter submitted Dow Jones's relevant FOIA request on September 15, 2021, which USPS denied in a timely manner on September 17, 2021. Dow Jones filed an administrative appeal, which the USPS General Counsel's Office denied on December 9, 2021. A *City Lab* reporter submitted Bloomberg's relevant FOIA request in March 2021, which USPS denied in a timely manner on April 19, 2021. Bloomberg similarly filed an

administrative appeal, which the USPS General Counsel's Office denied on July 29, 2021.

Appellants initiated this consolidated lawsuit on July 18, 2022, seeking declaratory relief and an order directing USPS to immediately disclose the responsive records. As in most FOIA cases, the parties cross-moved for summary judgment. *See Seife v. U.S. FDA*, 43 F.4th 231, 238 (2d Cir. 2022) ("FOIA cases are often resolved by summary judgment."). The key evidence before the district court included declarations by Jeffrey Tackes, the Director of Digital Business Services at USPS, and by Marie Patino and Paul Overberg, the reporters who filed the FOIA requests. The district court granted summary judgment to USPS in an opinion and order dated June 13, 2023, and the judgment was entered the next day. Appellants then filed a timely notice of appeal.

## STANDARD OF REVIEW

We review orders granting summary judgment in FOIA cases de novo. *N.Y. Times Co. v. U.S. Dep't of Health & Hum Servs.*, 15 F.4th 216, 219 (2d Cir. 2021). The agency, in this case the Postal Service, bears the burden of proof, with "doubts resolved in favor of disclosure." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994). The agency can satisfy this burden by providing "[a]ffidavits or

declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). "[T]he agency's justification is sufficient if it appears logical and plausible." *ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018).

## DISCUSSION

We affirm the order and judgment of the district court. USPS has satisfied its burden of establishing that the requested COA data is "information of a commercial nature" that would not be disclosed under good business practices and may be withheld pursuant to FOIA Exemption #3 and the Postal Reorganization Act. In today's information economy, user and location intelligence, such as the COA data, undoubtedly has commercial value. And while merely having value is insufficient to make the requested documents "of a commercial nature," the COA data was part of a specific commercial product derived from USPS's primary line of business—delivering the mail.

## I. Relevant Law

This case involves two major federal statutes: FOIA, 5 U.S.C. § 552, and the Postal Reorganization Act, 39 U.S.C. § 101 *et seq.* FOIA was enacted to "keep[] citizens in the know about their government." *What is FOIA?*, FOIA.gov,

https://www.foia.gov/about.html [https://perma.cc/S3J6-7XK2] (last visited Aug.

14, 2024). The Postal Reorganization Act was enacted to "improve and modernize

the postal service" and enable one of our oldest and most important governmental

institutions to adapt to a growing economy. Postal Reorganization Act, Pub. L.

No. 91-375, 84 Stat. 719 (1970). This case concerns the interaction of these two

statutes through FOIA Exemption #3, which establishes that FOIA's agency

records disclosure requirement "does not apply to matters that are . . . specifically

exempted from disclosure by statute . . . if that statute . . . establishes particular

criteria for withholding or refers to particular types of matters to be withheld." 5

U.S.C. § 552(b)(3)(A)(ii).

## A. Public Access to Information and the Freedom of Information Act

FOIA was enacted "to facilitate public access to Government documents"

and is "premised on 'a policy strongly favoring public disclosure of information

in possession of federal agencies.'" *Jabar v. U.S. Dep't of Just.*, 62 F.4th 44, 49 (2d

Cir. 2023) (per curiam) (quoting *Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279,

286 (2d Cir. 1999)). Indeed, "[t]he generation that made the nation thought secrecy

in government one of the instruments of Old World tyranny and committed itself

to the principle that a democracy cannot function unless the people are permitted

to know what their government is up to." *Mink*, 410 U.S. at 105 (Douglas, J., dissenting) (citation omitted).

Accordingly, "any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions." *A. Michael's Piano*, 18 F.3d at 143; *see also Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318, 327 (2d Cir. 2022). We interpret these nine exemptions with "a narrow compass," and the "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *ACLU v. CIA*, 24 F.4th 863, 867 (2d Cir. 2022) (internal quotation marks and citation omitted); *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). In crafting FOIA's nine exemptions, Congress balanced the strong interest in government accountability against "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).

## B. The U.S. Postal Service and the Postal Reorganization Act of 1970

Mail delivery through USPS is "a basic and fundamental service provided to the people by the Government of the United States." 39 U.S.C. § 101(a). USPS is one of our democracy's oldest institutions. It is an institution that, in fact,

predates the Declaration of Independence—the Continental Congress appointed Benjamin Franklin as the first Postmaster General in 1775. *See The United States Postal Service: An American History* 2 (PDF pagination) (2002), https://about.usps.com/publications/pub100.pdf [https://perma.cc/FYE4-87S5]. "Our founding fathers knew that a robust, reliable, and secure means of exchanging information was critical to unify the distant parts of our nation." *Id.* And although many things have changed, "the Postal Service's historic mission remains the same—to provide all Americans, in all areas and communities, with access to prompt, reliable, and efficient services." *Id.*

USPS, including the men and women who make up its workforce, is also one of our country's most cherished institutions. A 2023 Gallup poll indicated that 77% of the American public views USPS favorably. *See Public Service Means Public Input*, American Postal Workers Union (Jan. 8, 2024), https://apwu.org/news/magazine/public-service-means-public-input [https://perma.cc/3VXW-7GRC]. "As the eyes and ears of the neighborhoods they serve, Postal Service employees go the extra mile for customers and communities every day and are highly committed to their role as public servants." *Committed to Public Service*, U.S. Postal Serv., https://about.usps.com/publications/annual-

report-comprehensive-statement-2014/ar2014/annualreport2014_tech_006.htm

[https://perma.cc/V44V-FR3Y].

As the Postal Service grew larger over time, Congress recognized that the agency had become "heavily overburdened and in deep trouble" due to large agency budget deficits. H.R. Rep. No. 91-1104, at 4–5 (1970). The Postal Reorganization Act, codified at 39 U.S.C. § 101 *et seq.*, allowed the Postal Service to modernize and survive in a growing economy.

Through the Postal Reorganization Act, Congress deemed it "essential" that the postal agency become "self-supporting" and "no longer rely on massive annual infusions of general revenues . . . at the taxpayers' expense." H.R. Rep. No. 91-1104, at 17. Congress thus "transformed the Post Office Department into a Government-owned corporation called the United States Postal Service." *USPS v. Council of Greenburgh Civic Ass'ns.*, 453 U.S. 114, 122 (1981). Congress intended to improve and modernize "the Postal Service to be run more like a business than had its predecessor, the Post Office Department." *Kuzma v. USPS*, 798 F.2d 29, 31 (2d Cir. 1986) (*quoting Franchise Tax Bd. of Cal. v. USPS*, 467 U.S. 512, 519–20 (1984)).

This did not mean the newly reorganized USPS would operate like a business in all aspects—as the Supreme Court has recognized, "[t]he Postal Service

has different goals, obligations, and powers from private corporations. . . . The most important difference is that it does not seek profits, but only to break even[.]" *USPS v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 747 (2004) (citation omitted). What the Postal Reorganization Act did mean, though, was that USPS would not be subject to certain federal statutes "which in most instances apply to Government agencies and functions." S. Rep. No. 91-912, at 5 (1970). One of the federal laws that Congress specified would have a different applicability to the reorganized USPS was FOIA.

## C. The FOIA Exemption Relevant to this Case

As discussed above, all agency records are presumptively available under FOIA unless they fall into one of nine statutory exemptions. This case concerns only one of these exemptions: FOIA Exemption #3.

### 1. FOIA Exemption #3

FOIA Exemption #3 establishes that the general FOIA disclosure requirement "does not apply to matters that are . . . specifically exempted from disclosure by statute . . . if that statute . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii). To claim FOIA Exemption #3, "the government must demonstrate

that: '(1) the statute invoked qualifies as an Exemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope.'" *Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 42 (2d Cir. 2020) (brackets omitted) (quoting *A. Michael's Piano*, 18 F.3d at 143); *see also Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 72 (2d Cir. 2009).

"Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner*, 592 F.3d at 72 (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)). FOIA Exemption #3 thus "incorporates the policies" of the other statute being invoked. *A. Michael's Piano*, 18 F.3d at 143.

## 2. The Postal Reorganization Act's "Information of a Commercial Nature" Exemption

The withholding statute incorporated into FOIA Exemption #3 in this case is a provision of the Postal Reorganization Act exempting USPS from FOIA disclosure of six different categories of documents. Only one of those categories of documents is at issue in this case: the "information of a commercial nature" exemption. In enacting this "commercial nature" exemption, "Congress spoke

loudly . . . providing USPS with a broad release from many FOIA disclosure requirements with which other agencies must comply." *Wickwire Gavin, P.C. v. USPS*, 356 F.3d 588, 592 (4th Cir. 2004).

The text of the exempting provision reads in relevant part that "[FOIA] shall not require the disclosure of . . . information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed." 39 U.S.C. § 410(c)(2). This "information of a commercial nature" exception can be broken down into two elements: the requested information must be "of a commercial nature" and must be something "which under good business practice would not be publicly disclosed." *See id*.[1]

---

[1] We caution that our analysis of this particular withholding statute should not be read as an interpretation of FOIA Exemption #4's more generalized protection for "commercial or financial information." 5 U.S.C. § 552(b)(4). Both exemptions rely on the word "commercial." FOIA Exemption #4 establishes that FOIA "does not apply to matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged and confidential." *Id*. However, the Postal Reorganization Act's relevant withholding language contains no such qualifier about the source of the information. In fact, the Postal Reorganization Act explicitly states that it protects "information of a commercial nature . . . whether *or not* obtained from a person outside the Postal Service." 39 U.S.C. § 410(c)(2) (emphasis added). When interpreting a statute, we must "give effect, if possible, to every clause and word." *Seife*, 43 F.4th at 239 (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). If we are to give every word of Exemption #4 meaning, then "the confidential commercial or financial information must be obtained from a person" to be protected. *Id*. at 240. The "contemplated harm" under Exemption #4 is to "the submitter" of commercial information. *Id*. Exemption #4 exists to protect businesses that are required to submit confidential commercial information to an agency for regulatory purposes from competitors who could otherwise seek to obtain that information through FOIA. In the case of USPS and COA data, however, no person submits commercial or financial information. Rather, the data is rendered commercial information by virtue of the Postal Service's efforts to couple it with other demographic data. The interests protected by Exemption #4 are thus not implicated when we give effect to every word in both statutes.

## II.    Analysis

We affirm the judgment of the district court.  The requested COA data is "information of a commercial nature . . . which under good business practice would not be publicly disclosed."  *See id.*  The requested COA data is a valuable monetizable commodity generated as part of USPS's core "commercial" activity— the delivery of the mail.  Pursuant to its statutory mandate under the Postal Reorganization Act, USPS has chosen to sell this monetizable commodity to generate revenue.  USPS has satisfied its burden of proof for withholding the COA data pursuant to FOIA Exemption #3 and the Postal Reorganization Act.

### A. Framing the Narrow Dispute in This Case

To start, it is useful to frame the relatively narrow scope of the dispute in this case.  As discussed above, when withholding documents under a FOIA Exemption #3 statute, an agency such as USPS must "demonstrate that: '(1) the statute invoked qualifies as an Exemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope.'"  *Spadaro*, 978 F.3d at 42 (brackets omitted) (quoting *A. Michael's Piano*, 18 F.3d at 143).  No party in this case contests that the Postal Reorganization Act's "information of a commercial nature" language constitutes an Exemption #3 withholding statute.  The *only*

dispute before us is whether the requested COA data is "of a commercial nature," 39 U.S.C. § 410(c)(2), and thus "fall[s] within that statute's scope," *Spadaro*, 978 F.3d at 42 (citation omitted).

## B. The Requested COA Data Is Protected by the Postal Reorganization Act's "Information of a Commercial Nature" Exemption

USPS bears the burden of demonstrating that the requested COA data satisfies both elements of the "information of a commercial nature" exemption. USPS can satisfy this burden by providing "[a]ffidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812. The relevant "declarations" in this case, as discussed above, are the original and supplemental declarations of Jeffrey Tackes, USPS's Director of Digital Business Services (the "Tackes Declarations"). USPS has met its burden on both elements—the facts from the Tackes Declarations demonstrate that the requested COA data is both "of a commercial nature" *and* is the type of data a private business ordinarily would not disclose under good business practice.

1. **The COA Data Is "Of a Commercial Nature" Because It Is a Monetizable Commodity Derived from the Postal Service's Core Business of Delivering Mail**

USPS took the position at oral argument that the requested COA data is "of a commercial nature" because it has monetary value. The district court took a similar approach, finding that "[e]xchanging data for money falls within the plain meaning of the word 'commerce' and the term 'information of a commercial nature.'" *Bloomberg L.P. v. USPS*, No. 22cv6112 (DLC), 2023 WL 3976010, at *4 (S.D.N.Y. June 13, 2023). We agree with the Ninth Circuit that merely having monetary value "is too broad a definition of commercial[.]" *Carlson v. USPS*, 504 F.3d 1123, 1129 (9th Cir. 2007). We find that the requested COA data is "of a commercial nature" for a narrower reason—not only does it have monetary value, but that value is derived from and related to USPS's core "commercial" activity of delivering the mail.

The Postal Reorganization Act does not define the term "commercial." When a statute does not define a specific term, we "look to its ordinary meaning found in 'contemporary dictionary definitions.'" *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) (quoting *El Omari v. Int'l Crim. Police Org.*, 35 F.4th 83, 88 (2d Cir. 2022)). At the time the Postal Reorganization Act was enacted, Black's Law Dictionary defined "commercial" as "[r]elating to or connected with

trade and traffic or commerce in general," and defined "commerce" as "[t]he exchange of goods, productions, or property of any kind." <u>Commercial</u>, Black's Law Dictionary (Rev. 4th ed. 1968); <u>Commerce</u>, Black's Law Dictionary (Rev. 4th ed. 1968).[2]

In today's information-driven economy, the requested COA data is undoubtedly related to the trade, traffic, and exchange of goods in which USPS engages. As the Tackes Declarations explain, through the process of operating a nationwide mail network, "USPS generates intellectual property in the form of data that competes directly with data assets and services offered by other data creators and data brokers in the marketplace." J. App'x at 29. Private businesses "commonly monetize data assets, particularly those that generate unique value in the marketplace." *Id*. The requested COA data is exactly this type of "data asset."

As a data asset, the requested COA data undoubtedly has great economic value. As the Tackes Declarations explain, "location data sources are critical inputs used . . . to process and/or visualize real world population movement trends. Location data intelligence is leveraged in many markets and use cases,

---

[2] In the similar context of FOIA Exemption #4, this Court defined "commercial" as "pertaining or relating to or dealing with commerce." *American Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863, 870 (2d Cir. 1978). The Ninth Circuit adopted an essentially identical definition in the specific context of the Postal Reorganization Act's "information of a commercial nature" language. *See Carlson*, 504 F.3d at 1128–29.

including placement or staging of services (retail, real estate, construction, marketing, etc.)." *Id*. at 37. Monetization of data assets is a common practice among large businesses today, and there is no doubt that a data asset as large and robust as the USPS COA database has significant potential value.

As stated above, it would be insufficient to say the requested COA data is "commercial" merely because it has potential economic value. The value needs to have some relation to the "commerce" in which USPS engages—the delivery of the mail.

At oral argument, Appellants presented the hypothetical of USPS choosing to sell access to the private schedules of the Postmaster General or the members of the USPS Board of Governors. Such information would certainly have value to corporate lobbyists. This information would not, however, derive this value from any connection to the trade or commerce in which USPS engages. The daily schedules of high-ranking officers are documents that any federal agency would keep in the course of its ordinary governmental functions. Such schedules are much more akin to the documents concerning the "names, addresses, telephone numbers, and regular business hours of post offices" that the Ninth Circuit found to *not* constitute "commercial information" in *Carlson*. 504 F.3d at 1129.

The requested COA data, however, is *not* something kept in the ordinary course of governmental business that merely happens to have economic value. COA data is a specific, monetizable data asset that USPS generates through carrying out its statutorily mandated commercial activity of delivering the mail. This data is "commercial" in every sense of the word.

Appellants are certainly correct that the Postal Service is late to the game in realizing that the COA data has commercial value—after all, the record indicates that USPS had granted similar FOIA requests mere months before denying the requests at issue in this case. However, nothing in FOIA or the Postal Reorganization Act precludes the Postal Service from changing how it treats certain information as it adapts to shifts in the broader economy. Indeed, delegating this type of business decision to the Postal Service itself was one of the primary motivations for the Postal Reorganization Act. *See Kuzma*, 798 F.2d at 31 (discussing a USPS regulation that "manifested . . . the specific concerns of the Postal Reorganization Act in modernizing the day-to-day managerial operations of the postal system" and "represents a proper exercise of the business discretion afforded to USPS by congressional mandate"). Additionally, it strikes us as relevant that USPS did not withhold this information out of a general interest in

someday monetizing it—at the time USPS denied Appellants' FOIA requests, the development of Population Mobility Trends was already under way. This is a sharp distinction from the information about Post Office locations in *Carlson*, which provided USPS with only the vague and undefined benefit of potentially increasing website traffic. *See Carlson*, 504 F.3d at 1127–28.

## 2. The COA Data Is Information That Would Not Ordinarily Be Disclosed Under Good Business Practice

In addition to demonstrating that requested documents are "of a commercial nature," USPS must demonstrate that the requested documents "under good business practice would not be publicly disclosed." 39 U.S.C. § 410(c)(2). We find the Fourth Circuit's analysis of "good business practice" to be compelling—whether release of the documents would be good business practice "should be decided with reference to what businesses normally do." *Wickwire Gavin*, 356 F.3d at 594.

The Tackes Declarations establish that as a valuable, monetizable data asset that USPS intended to sell through Population Mobility Trends, the requested COA data would not ordinarily be disclosed "under good business practice." Put

simply, a private business would not give away for free the information that it was also attempting to sell.[3]

As part of the development process for Population Mobility Trends, USPS conducted extensive market research, which included "valuating the other services in the market; determining how those services are consumed[; and] determining which licensing terms are applicable for this type of data offering[.]" J. App'x at 37. The original Tackes Declaration provided three specific examples of competitor private businesses that sell similar types of location data.[4] *See id*. USPS reviewed this research and made a reasonable determination that "other private businesses that gather and sell location data would not customarily release to the public information relating to population movement patterns and trends." *Id*. at 37–38.

---

[3] The concurring and dissenting opinion points out that USPS conceded that it could not assert Exemption #3 over the requested data if it did not maintain the Population Mobility Trends product. Concurring and Dissenting Op. 2-3. But because the Population Mobility Trends product is on the market, and because we have concluded that the requested COA information is commercial, that the Population Mobility Trends does not contain all of the information that Appellants may want does not render the relevant data non-commercial.

[4] *See, e.g.*, Here Technologies, https://here.com/ [https://perma.cc/L328-D5JP] (last visited Aug. 15, 2024) (private business that sells mapping data); SafeGraph, https://safegraph.com [https://perma.cc/HM6Y-S3UB] (last visited Aug. 15, 2024) (private company that collects, analyzes, and sells point-of-interest data generated through web traffic analysis); Unacast, https://www.unacast.com [https://perma.cc/8ZP4-M3RY] (last visited Aug. 15, 2024) (private company that collects, analyzes, and sells foot traffic data).

Appellants point to several examples in the record of other businesses publishing articles and studies produced using internally generated data about population movement, including a study from social media company LinkedIn and studies from moving and real estate companies such as Zillow, Redfin, and Allied Van Lines. Appellants also cite an academic paper based on data Facebook freely disclosed as part of its "Data for Good" initiative. We find the district court's analysis of these public studies to be compelling—these companies published these reports or provided data for these reports to *promote* their primary, revenue-generating lines of business, such as social networking, home sales, and moving and storage. *See Bloomberg*, 2023 WL 3976010 at *5. USPS could have elected to make a similar business decision and offer COA data for free as a means of publicizing mail service, but instead it elected to monetize the data under its statutory mandate to generate new streams of revenue. The Postal Reorganization Act gives USPS the right to make such a decision.

### C. The Postal Reorganization Act and the Structure of Exemption #3 Obviate Any Tension Between Public Access and the Agency's Operational Mission

Many of the other FOIA exemptions require a weighing of competing interests. *See, e.g.*, *Reps. Comm. for Freedom of Press*, 489 U.S. at 772 (weighing privacy concerns with the public interest in analyzing a request under FOIA

Exemption #7).  However, a determination of whether documents were properly withheld under Exemption #3 and the Postal Reorganization Act requires no such weighing of interests.  Indeed, "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner*, 592 F.3d at 72 (quoting *Ass'n of Retired R.R. Workers*, 830 F.2d at 336).  Exemption #3 "incorporates the policies" of the other statute being invoked.  *A. Michael's Piano*, 18 F.3d at 143.

The policies invoked by the Postal Reorganization Act are entirely about "making the United States Postal Service more businesslike, similar in function and management to its competitors." *Wickwire Gavin*, 356 F.3d at 596.  Through the Postal Reorganization Act and FOIA Exemption #3, Congress has granted the Postal Service a relatively broad FOIA exemption that is substantially different from exemptions available to other agencies.  The public interest in data-informed journalism that Appellants present is certainly compelling.  However, Congress has made a policy choice not to require USPS, or a reviewing court, to weigh that public interest when determining whether to withhold commercial information.

## CONCLUSION

This Court construes FOIA exemptions narrowly and resolves doubts against the agency to vindicate FOIA's statutory interest of "strongly favoring public disclosure of information in the possession of federal agencies." *Jabar*, 62 F.4th at 49. However, in recognizing the unique importance of and unique challenges involving USPS as an institution, Congress elected to grant USPS certain exemptions from some generally applicable aspects of administrative law through the Postal Reorganization Act. Today, we find that USPS has carried its burden of establishing that the requested COA data is information of a commercial nature that would not be publicly disclosed under good business practice. That is enough to resolve the case before us. For the foregoing reasons, we **AFFIRM** the judgment of the district court.